***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of proceedings before Deputy Commissioner Stephenson and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and following, and in a Pre-Trial Agreement admitted into evidence as Stipulated Exhibit #1, as
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the parties on 1 January 2001 and 9 July 2001.
3. On those dates NCFA Mutual Insurance Co. was the carrier-defendant.
4. Plaintiff's average weekly wage is to be determined.
5. The following Industrial Commission Forms are admitted into evidence at the hearing before the deputy commissioner as Stipulated Exhibit #2: Forms 19 and 61 from I.C. No. 163287 and the 18, 33 and 33R from I.C. No. 168278.
6. Plaintiff's medicals from Dr. Sanford Guttler are admitted into evidence as Stipulated Exhibit #3.
7. Plaintiff's medicals from Dr. Peter Hurley are admitted into evidence as Stipulated Exhibit #4.
8. Employment related documents are admitted into evidence as Stipulated Exhibit #5.
9. Additional medical records are admitted into evidence as Stipulated Exhibit #6.
10. A videotape of three jobs at defendant-employer; wide belt sander, pump sander and flutter sander is admitted into evidence as Stipulated Exhibit #7.
11. Issues involve whether plaintiff's bilateral arm/shoulder problems are compensable; and, if so, what amounts is plaintiff entitled.
 *********** RULINGS ON EVIDENTIARY MATTERS
The objections contained within the depositions of Dr. Jay Piland, Dr. Peter Hurley, and Dr. Jerry Barron are ruled upon in accordance with the applicable provision of the law and the Opinion and Award in this case.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following
 FINDINGS OF FACT
1. In 2001 plaintiff was a 46-year-old female employed with defendant-employer. Defendant-employer is in the business of manufacturing wood furniture. Plaintiff began work with defendant-employer in 1994 as a flutter sander and pump sander.
2. Plaintiff's job involved sanding hundreds of eight inch (8") to thirty inch (30") long pieces of wood furniture legs and frame parts during an eight (8) to nine (9) hour day, five (5) to six (6) day workweek. While sanding vibrations were transferred to her hands/arms as the pieces are held against the sanding leads. The employee's elbows are stressed as they are held in constant bent positions. The employee's arms are moved backward and upward in constant rocking motions.
3. Plaintiff began to experience right shoulder problems about June 1998 and was first seen by her family doctor, Dr. Sanford Guttler, for shoulder complaints on 29 June 1998. Dr. Guttler diagnosed plaintiff with chronic bursitis or tendonitis of the right shoulder, which never resolved. The employee fell on 12 March 2000, while trying to pick up her granddaughter, striking her right shoulder. The next day plaintiff sought treatment from Dr. Guttler and the injury was so bad she could not lift her right arm. Prior to this, plaintiff had worked with sporadic shoulder complaints.
4. Dr. Hurley, an orthopaedic surgeon, treated plaintiff 9 July 2001 to 28 January 2002. A 31 July 2002 right shoulder surgery confirmed an impressive right rotator cuff tear. The tear was large and the tissue around was of very poor quality. Plaintiff's shoulder tissue resembled someone seventy-five (75) years old rather than plaintiff's age of 46. Due to the severity of the tear, plaintiff will continue to experience problems. Dr. Hurley also removed a large bone spur from the joint in her shoulder.
5. Dr. Hurley placed plaintiff on "no work status" 30 July 2001 to 31 August 2001. Thereafter, and on a permanent basis, Dr. Hurley restricted plaintiff to no overhead reaching or repetitive use of the right arm.
6. On or about 1 September 2001 plaintiff began performing one-handed work at the wide-belt sander or sand master machine. On or about 11 September 2001 plaintiff reported left elbow pain to her supervisor. Plaintiff was sent to Dr. John Piland at Hart Industrial Clinic. Dr. Piland diagnosed left lateral epicondylitis along with left medial epicondylitis. Although the risk was low for this type of injury, the job on the sand master could have aggravated the left lateral epicondylitis, but it in no way affected the left medial epicondylitis. Dr. Piland kept plaintiff out of work 11 September 2001 to 17 September 2001.
7. On 14 January 2002 plaintiff sought treatment from Dr. Jerry Barron. On 7 March 2002 Dr. Baron performed a second surgery on her right shoulder to repair a rotator cuff injury. The greater weight of the evidence is that this retear occurred without any precipitating event.
8. Although plaintiff's job could have caused or aggravated plaintiff original rotator cuff tear, it is just as likely, or more so, that plaintiff's fall on 12 March 2000 caused the tear. Plaintiff's shoulder was already in poor condition and she steadily sought treatment after the fall on 12 March 2000 for her right shoulder. Dr. Barron and Dr. Hurley were not made aware of plaintiff's right shoulder fall until the medical depositions.
9. The greater weight of the evidence given the timing of plaintiff's complaints with respect to the 12 March 2000 fall, is that plaintiff's job did not cause or substantially worsen plaintiff's shoulder complaints.
10. However, the greater weight of the evidence is that plaintiff's left lateral epicondylitis was caused by or aggravated by plaintiff's job with defendant-employer; and that plaintiff's employment with defendant-employer placed her at an increased risk for contracting lateral epicondylitis as opposed to those members of the general public not so employed.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. Plaintiff has failed to prove that she suffered an injury by accident or specific incident, which caused or materially aggravated her problems with her rotator cuff while in the course and scope of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment when she developed left lateral epicondylitis of the elbow and as a result missed work for this injury 11 September 2001 through 17 September 2001. N.C. Gen. Stat. § 97-2(6).
3. As a result of the compensable injury, plaintiff is not entitled to temporary total disability compensation, as she was not out of work the requisite number of days. N.C. Gen. Stat. § 97-28.
4. Subject to the limitations of N.C.G.S. § 97-25.1, plaintiff is entitled to have defendant pay for reasonably necessary medical expenses incurred as a result of the compensable injury that tend to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. § 97-2(19); § 97-25; and § 97-25.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay all medical expenses incurred by plaintiff as a result of the left lateral epicondylitis.
2. Under the law, plaintiff's claim for her rotator cuff problems, must be, and the same is DENIED.
3. Defendants shall pay the costs.
This the 25th day of July 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER